# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **KATRINA BRADY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:25-cv-739-CLS** |
| | ) | |
| **CITY OF HUNTSVILLE, ALABAMA,** | ) | |
| ***et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Katrina Brady, who is a black female, was employed by the City of Huntsville, Alabama, as a dispatcher in the City's Police Department from September of 2016 until her employment was terminated on January 8, 2025. The initial complaint filed on her behalf by Huntsville attorney Richard R. Newton was *115 pages in length*, and contained *536 numbered paragraphs!*[1] It alleged five claims against the City: discrimination based upon plaintiff's sex and race, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Counts I, II, and III); violation of the "Pregnant Workers Fairness Act of 2023," 42 U.S.C. § 2000gg *et seq.* (Count IV); and violation of the "Providing Urgent Maternal Protections for Nursing Mothers Act of 2022," 29 U.S.C. § 218d (Count V). It also alleged claims under 42 U.S.C. § 1985(2) and (3) against two individual defendants

---

[1] Doc. no. 1 (Complaint filed May 12, 2025).

— Huntsville Police Chief Kirk Giles, and Deputy Chief Michael Johnson — for an alleged conspiracy to deprive plaintiff of rights secured by the Fourteenth Amendment of the United States Constitution (Counts VI and VII).

Defendants filed a motion to dismiss the complaint, contending that it violated Rules 8 and 10 of the Federal Rules of Civil Procedure, and was an impermissible "shotgun pleading." Doc. no. 12 (Motion to Dismiss). Defendants explained *just some* of the *many* problems presented by plaintiff's 115-page complaint in the brief supporting their motion to dismiss. For example:

- "[M]any of the complaint's 536 paragraphs over 115 pages are utterly conclusory, with the allegations of a truly factual nature buried within these conclusions." Doc. no. 13 (Brief in Support of Defendants' Motion to Dismiss), at 7.

- "Each of the Defendants must sort through over a hundred pages and a tremendously large number of paragraphs just to read the pleading itself, much less discern what allegations are intended to provide the factual support for each of Plaintiff's claims." *Id.*

- "Plaintiff's outward efforts at delineating the allegations that are incorporated into each count amount to a farce, especially when hundreds upon hundreds of prior paragraphs are incorporated into many of the counts." *Id.* at 9.

Defendants also argued that some of plaintiff's claims should be dismissed on substantive grounds: *e.g.,* her § 1985 claims were barred by the intracorporate conspiracy doctrine; and, plaintiff lacked standing to assert a claim for injunctive relief under the Providing Urgent Maternal Protections for Nursing Mothers Act of

2022. *Id*. at 9-16.

Plaintiff's attorney responded to defendants' motion by disputing their characterization of his complaint as a "shotgun pleading,"[2] *but also by filing an amended complaint*, which rendered the motion to dismiss moot. *See* doc. no. 17 ("Plaintiff's Response to City of Huntsville's [*sic*[3]] Motion to Dismiss"), and doc. no. 19 ("Amended Complaint as a Matter of Course").

However, the amended complaint did not address the deficiencies identified in defendants' motion to dismiss the original complaint and supporting brief. *Instead, plaintiff's counsel doubled down. Richard R. Newton's amended complaint swelled to a length of* **one hundred and thirty pages**, *and contains* **more than 603 numbered paragraphs**.[4] His amended pleading alleges the same claims as the original complaint, but added claims under 42 U.S.C. § 1983 against Huntsville Police Chief Kirk Giles and Deputy Chief Michael Johnson for alleged violations of plaintiff's Equal Protection rights with respect to her sex and race (*i.e.*, Counts VIII and IX (Chief Giles), and X and XI (Deputy Chief Johnson)).

The following opinion addresses defendants' motion to dismiss plaintiff's

---

[2] See, *e.g.*, doc. no. 17 (Plaintiff's Response to Defendants' Motion to Dismiss Original Complaint), at 7-9.

[3] The motion to dismiss was submitted by all defendants, not just the City.

[4] The section entitled "Request for Relief" contains fourteen unnumbered paragraphs, identified by the letters "A" through "N." Doc. no. 19 (Amended Complaint), at 126-29.

amended complaint.  *See* doc. no. 24 (Motion to Dismiss Amended Complaint), and doc. no. 25 (Brief in Support of Motion to Dismiss).

## I.  STANDARDS OF REVIEW

The relevant portion of Federal Rule of Civil Procedure 12 permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "*short and plain statement* of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

## II. DISCUSSION

Seven claims clearly are due to be dismissed; hence, they will be addressed first.

**A.    COUNT V** — 29 U.S.C. § 218d

The "Providing Urgent Maternal Protections for Nursing Mothers Act of 2022," 29 U.S.C. § 218d, expanded workplace protections for nursing mothers.  The law requires employers to provide reasonable break time and private spaces for lactating

employees to express breast milk, and to do so for up to one year following the birth of a child. *Id.* § 218d(a). Employees possess a private right of action for violations of the Act's requirements, and may pursue legal and equitable remedies. 29 U.S.C. § 216(b).[5] In the present case, plaintiff states that she seeks

> injunctive relief in the form of an Order compelling Defendant Huntsville to draft, enact and implement both City- and Department-wide policies and practices that conform and comply with the Pump Act [*i.e.*, the acronym for the Providing Urgent Maternal Protections for Nursing Mothers Act of 2022], as well as to train and supervise City employees to respect and abide by all laws concerning nursing mothers.

Doc. no. 19 (Amended Complaint), at 127 (alteration supplied). Defendants contend that plaintiff lacks Article III standing to assert a claim for injunctive relief, because she no longer is employed by the City and, therefore, cannot show her entitlement to *prospective* injunctive relief.[6]

Plaintiff's standing to seek injunctive relief depends upon whether *she* is likely to suffer *future* injury from the allegedly unlawful conduct. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013). As a former employee, plaintiff cannot show a "real and immediate — as opposed to a merely conjectural or hypothetical — threat of future injury." *Id.*; *see also Shotz v. Cates*, 256 F.3d 1077,

---

[5] The statutory provision cited in text provides, among other things, that: "Any employer who violates the provisions of section 215(a)(3) or 218d of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) or 218d of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

[6] Doc. no. 25 (Brief in Support of Motion to Dismiss), at 22-26.

1081 (11th Cir. 2001) ("[A] plaintiff lacks standing to seek injunctive relief unless [she] alleges facts giving rise to an inference that [she] will suffer future discrimination by the defendant.") (alterations supplied).  Therefore, Count V of plaintiff's amended complaint will be dismissed with prejudice.

**B.    Counts VI and VII** — 42 U.S.C. § 1985(2) and (3)

Counts VI and VII allege that Chief Giles and Deputy Chief Johnson violated 42 U.S.C. § 1985(2) and (3) by conspiring with each other to deprive plaintiff of her due process and equal protection rights through various actions they took with respect to her employment.[7]  Defendants contend that plaintiff's conspiracy theories are

---

[7] The statutory provisions cited in text, which pertain to conspiracies to interfere with civil rights, read as follows:

**(2) Obstructing justice; intimidating party, witness, or juror**
If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

**(3) Depriving persons of rights or privileges**
If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from

barred by the intracorporate conspiracy doctrine.[8]

As the Eleventh Circuit observed in a unanimous, *en banc* opinion in the case

of *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031 (11th Cir. 2000) (*en banc*),

the intracorporate conspiracy doctrine holds that

> acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.

*Id*. at 1036. The doctrine also applies to public employers, such as the City of

Huntsville. *See Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001);

*Dickerson v. Alachua County Commission*, 200 F.3d 761, 768 (11th Cir. 2000).

Plaintiff identified only two conspirators: Chief Giles and Deputy Chief

Johnson. Both are City employees, and no outsiders are alleged to have been involved

---

giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(2) and (3).

[8] Doc. no. 25 (Brief in Support of Motion to Dismiss), at 12.

in the conspiracy.  Plaintiff alleges that Chief Giles and Deputy Chief Johnson conspired to take various employment-related actions against her in the course of their official duties.  They both were acting, in effect, as the City itself when allegedly conspiring against plaintiff.  Accordingly, the intracorporate conspiracy doctrine applies, and bars plaintiff's claims under 42 U.S.C. §§ 1985(2) and (3).  Therefore, Counts VI and VII of the amended complaint also will be dismissed with prejudice.

**C.    Counts VIII, IX, X, XI** — Section 1983 Claims

Plaintiff alleges that Chief Giles and Deputy Chief Johnson deprived her of rights secured by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  In particular, she alleges that each of those defendants violated her rights because of her race and/or sex when they initiated disciplinary proceedings against her and, ultimately, terminated her employment.  Those claims are based upon 42 U.S.C. § 1983, which provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

Notwithstanding the apparent breadth of the foregoing statutory language, whenever an official of a state, county, or municipality is sued under 42 U.S.C. § 1983 in a

8

personal, or "individual capacity," as opposed to being sued as a representative of his municipal employer, the official is entitled to invoke the so-called "doctrine of qualified immunity" as a defense. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). That doctrine protects state, county, or municipal governmental officials whose conduct violated "no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also*, *e.g.*, *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (same); *Lassiter v. Alabama A. & M. University*, 28 F.3d 1146, 1149 (11th Cir. 1994) (*en banc*) (same).

Stated differently, the doctrine of qualified immunity shields state, county, and municipal officials from suit for money damages if a reasonable official could have believed that his action was lawful, in light of clearly established law and the information possessed by the officer. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Even law enforcement officials who 'reasonably *but mistakenly* conclude that [their challenged actions were lawful]' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson*, 483 U.S. at 641) (emphasis and alteration supplied).

It has been said that the doctrine attempts to strike a balance between "the need

9

to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The Supreme Court and the Eleventh Circuit have "repeatedly . . . stressed the importance of resolving immunity questions *at the earliest possible stage in litigation.*" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (ellipsis and emphasis supplied, citation and internal quotation marks omitted), *rev'd on other grounds, Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *accord Miller v. Palm Beach County Sheriff's Office*, 129 F.4th 1329, 1333 (11th Cir. 2025); *Pace v. Capobianco*, 283 F.3d 1275 (11th Cir. 2002).

The doctrine initially requires a defendant to "prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). Plaintiff appears to contest that element, by stating that "[n]either Giles nor Johnson had any 'discretion' to violate Plaintiff's constitutional rights under color of law."[9] Significantly, however, plaintiff does not meaningfully dispute that Chief Giles and Deputy Chief Johnson acted within the scope of their discretionary authority when they took the complained-of employment actions.

---

[9] Doc. no. 29 (Plaintiff's Response to Motion to Dismiss), at 18.

Even so, there are two additional requirements. The first requires a court to ask whether the facts, viewed "in the light most favorable to the party asserting the injury," show that "the [defendant]'s conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If that question is answered affirmatively, the court then must proceed to analyze the second aspect of the two-part inquiry: *i.e.*, "whether the right was clearly established." *Id.*

Here, defendants contend that Chief Giles and Deputy Chief Johnson are entitled to qualified immunity because plaintiff did not allege a constitutional violation. In particular, they argue that plaintiff's claims that her rights secured by the Equal Protection Clause were violated by adverse employment actions taken by Chief Giles and Deputy Chief Johnson in retaliation for her complaints of race and sex discrimination are not cognizable. Plaintiff responds that the retaliation she suffered because of her complaints was *intertwined with* intentional race and sex discrimination, and she should be permitted to proceed with her § 1983 claims.

The Eleventh Circuit has long held that "[a] pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause." *Watkins v. Bowden*, 105 F.3d 1344, 1354-55 (11th Cir. 1997) (citing *Ratliff v. Dekalb County*, 62 F.3d 338, 340 (11th Cir. 1995)); *see also Gardner v. City of Camilla, Ga.*, 186 F. App'x 860, 864 (11th Cir. 2006). Plaintiff's argument that her complaints were intertwined

11

with race and sex discrimination is unavailing. Retaliation claims are necessarily *related* to perceived intentional discrimination, but there is no *constitutional* right under the Equal Protection Clause to be free from retaliation. Therefore, Chief Giles and Deputy Chief Johnson are entitled to qualified immunity, and the claims alleged in Counts VIII, IX, X, and XI will be dismissed with prejudice.

## D.    The Remaining Counts of Plaintiff's Amended Complaint

Defendants' primary argument for dismissal of the amended complaint drafted for plaintiff by Huntsville attorney Richard R. Newton is that it constitutes an impermissible "shotgun pleading." That contention is a statement of the obvious. As noted in Part I of this opinion, the Federal Rules of Civil Procedure require a pleading to contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 requires a plaintiff to "state [her] claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b) (alteration supplied). So-called "shotgun pleadings" violate those rules because they "fail to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Sheriff's Department*, 792 F.3d 1313, 1323 (11th Cir. 2015) (ellipsis supplied).[10]

---

[10] The Eleventh Circuit's opinion in *Weiland v. Palm Beach Sheriff's Department*, 792 F.3d 1313 (11th Cir. 2015), identified four categories of shotgun pleadings:

The Eleventh Circuit has repeatedly condemned shotgun pleadings, and demonstrated "little tolerance" for them. *See, e,g.*, *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018); *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 979-80 & n.54 (11th Cir. 2008) (listing numerous cases).  Shotgun pleadings "waste scarce judicial resources, 'inexorably broaden[ ] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine[ ] the public's respect for the courts.'" *Vibe Micro*, 878 F.3d at 1295 (quoting *Davis*, 516 F.3d at 981-83) (alterations in original).

Even though the remaining counts of plaintiff's amended complaint do not adopt *all* of her allegations into each successive count,[11] each incorporates hundreds of her previous allegations — a distinction without much, if any, difference.[12]

---

**[1]** The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. **[2]** The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.  **[3**] The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim of relief.  **[4]** Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id*. at 1321-23 (bracketed alterations and ellipsis supplied, footnotes omitted).

[11] This is the "most common type" of shotgun pleading condemned by the Eleventh Circuit in the *Weiland* opinion, discussed in the immediately preceding footnote.

[12] For example, Count I incorporates more than 400 factual allegations.  Doc. no. 19 (Amended Complaint), at ¶ 464.  With the exception of Counts IV and XI, each remaining count

Plaintiff's bloated complaint also "is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action,"[13] because it is rife with such assertions.  Entire sections of the amended complaint have no obvious relationship to plaintiff's claims:  *e.g.*, paragraphs 93 through 109, entitled "Training"; paragraphs 368 through 379, entitled "The City's Witnesses"; and paragraphs 380 through 387, entitled "Katrina Brady's Witnesses."

Plaintiff's response to such criticisms —"If Defendants wanted a 20-page Complaint, then they should have refrained from violating 130 pages worth of workplace discrimination and civil rights laws"[14] — is as spurious as it is unhelpful to a court with scarce resources to keep pace with a heavy docket.  Eleventh Circuit Judge Gerald Bard Tjoflat elaborated on that style of shotgun pleading in a concurring opinion in *Barmapov v. Amuial*, 986 F.3d 1321 (11th Cir. 2021), where he wrote:

> Much of the time, these complaints [*i.e.*, shotgun pleadings] are just poorly written.  For example, complaints that may contain meritorious claims but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" are subject to

incorporates more than one hundred factual allegations. *See id.* ¶ 473 (incorporating 256 paragraphs into Count II); ¶ 481 (incorporating 451 paragraphs into Count III); ¶ 513 (incorporating 147 paragraphs into Count V); ¶ 526 (incorporating 223 paragraphs into Count VI); ¶ 541 (incorporating 224 paragraphs into Count VII); ¶ 558 (incorporating 241 paragraphs into Count VIII); ¶ 575 (incorporating 151 paragraphs into Count IX); and ¶ 585 (incorporating 161 paragraphs into Count X).

[13] *Weiland*, 792 F.3d at 1322; see also note 10, *supra*.

[14] Doc. no. 29 (Plaintiff's Response Brief) at 5.

dismissal under our shotgun pleading case law. *Weiland v. Palm Beach Sheriff's Department*, 792 F.3d 1313, 1322 (11th Cir. 2015). To an outside observer, disposing of these otherwise viable claims **because a plaintiff's lawyer pled** *too many* **facts** may seem like strong medicine, particularly in light of *Ashcroft v. Iqbal'*s requirement that a complaint include *more* than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). And it is strong medicine, but for good reason.

**The federal judiciary is a system of scarce resources**, and "[i]t is not the proper function of courts in this Circuit to parse out [ ] incomprehensible allegations." *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020). **Our district courts have neither the manpower nor the time to sift through a morass of irrelevant facts in order to piece together claims for plaintiff's counsel**. *See, e.g., Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources."). As the drafters of their pleadings and as officers of the court, lawyers practicing in this Circuit bear a responsibility to preserve the limited resources of the judiciary **and present only clear, precise pleadings to the courts**. . . .

*Id.* at 1327-28 (Tjoflat, J., concurring) (italicized emphases in original, alteration and boldface supplied, footnote omitted). Judge Tjoflat could have been describing plaintiff's amended complaint.

Given the numerous pleading deficiencies sketched above, this court easily could justify granting defendants' motion, and dismissing all claims contained in plaintiff's amended complaint. The Eleventh Circuit has repeatedly emphasized that

15

"dismissal of a complaint *with prejudice* is warranted under certain circumstances," such as those presented in this case. *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (emphasis supplied).   Plaintiff disregarded the admonition against shotgun pleadings when she filed her initial, 115-page, 536-paragraph complaint.  Defendant's well-supported motion to dismiss that complaint accurately identified the shotgun aspects of that pleading, even beyond its unwieldy length.  Even so, plaintiff's attorney failed to heed defendants' valid criticisms of his pleading, and in an arrogant display of pique filed an *even longer, equally convoluted*, amended complaint.  His contention that the amended complaint is *not* a shotgun pleading is simply as disingenuous as it is offensive.

Of course, this court is mindful of the *general* requirement that a plaintiff be allowed "one chance to remedy the deficiencies" of a shotgun pleading.  *Vibe Micro*, 878 F.3d at 1295.  Here, however, it could be argued that plaintiff already had that chance.  As noted in the beginning of this opinion, defendants' motion to dismiss the original complaint and their supporting brief explained the pleading's *many* problems.[15]  Indeed, that motion and its supporting brief provided "as complete an explanation of the defects in [plaintiff's original] complaint as [her attorney] could have asked for." *Jackson*, 898 F.3d at 1358 (alterations supplied).

---

[15] See the second textual paragraph, *supra*, doc. no. 12 (Motion to Dismiss Original Complaint), and doc. no. 13 (Brief in Support of Defendants' Motion to Dismiss).

If this court were to take that route, however, the result would only be that of converting plaintiff's *plausibly* meritorious claim(s) into a malpractice suit against her attorney, Richard R. Newton.  For that reason, Mr. Newton — or, if plaintiff should so choose, another attorney retained by her to replace Mr. Newton — will be allowed one, final opportunity to file an amended complaint containing only a "short and plain statement"[16] of plaintiff's Title VII claims of sex and race discrimination, and retaliation (Counts I, II, and III), and her claim based upon the Pregnant Worker's Fairness Act of 2023 (Count IV).[17]  ***That pleading must not exceed twenty (20) pages in length***, and must address ONLY those four claims.

A separate Order, consistent with this memorandum opinion, will be entered contemporaneously herewith.

**DONE** and **ORDERED** this 6th day of April, 2026.

_____
Senior United States District Judge

---

[16] Fed. R. Civ. P. 8(a)(2).

[17] Defendants' motion to dismiss and supporting brief did not challenge on substantive grounds plaintiff's Title VII claims of gender and race discrimination, and retaliation based upon Title VII of the Civil Rights Act of 1964, as amended, or upon the "Pregnant Worker's Fairness Act of 2023."  Accordingly, the court concludes that plaintiff should be allowed a final opportunity to plead those claims.